**Patricia PERRYMAN, on behalf of herself and all persons similarly situated, Helen Jackson and Finesse Smith**

v.

**JOHNSON PRODUCTS COMPANY, INC.**

Civ. A. No. C75–1569A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 23, 1981.

Helen Littleton (Jackson), pro se.

John W. Walker, Walker, Hollingsworth & Jones, P. A., Little Rock, Ark., and Wiley A. Branton, Jr., Washington, D. C., for plaintiffs.

Cornelius E. Toole & Associates, Chicago, Ill., George L. Howell, Patterson & Parks, Atlanta, Ga., Julian B. Wilkins, Earle A. Malkin, Michael Guthrie, Lafontant, Wilkins & Butler, Chicago, Ill., for defendants.

ORDER

RICHARD C. FREEMAN, District Judge.

After considerable difficulty getting this case to trial, the same was tried to the court without a jury from May 12 to May 21, 1981. At the conclusion of the evidence, the court directed counsel to address certain

questions in the form of written briefs and revised proposed special findings of fact and conclusions of law. Again, apparently after some difficulty, briefs and revised proposed special findings and conclusions were filed and supplemented, and the case is now before the court for adjudication on the question of the liability *vel non* of the defendant for alleged sex discrimination pursuant to 42 U.S.C. §§ 2000e *et seq.* This is a class action and was initially certified as such by order of this court as follows:

All females who applied for employment with, or were employed by, the defendant in a nonproduction capacity after January 31, 1974.

Inasmuch as plaintiffs' evidence was confined almost exclusively to the sales divisions within defendant's organization, and not to all "non-production" employees, one of the first considerations which the court must give to any treatment of the evidence is whether or not to re-certify the class. Plaintiffs have indicated in their post-trial submissions that they have no objection to a re-definition or re-certification of the class, but defendant strongly objects to any such re-certification. The court will deal with this question in the body of this order. Accordingly, the court hereby makes the following Special Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The individually named plaintiffs in this action are two discharged females, Patricia Perryman and Helen J. Reddick (nee Jackson), who complain about their treatment at the hands of defendant, and Finesse S. Ward (nee Smith), who complains about her failure to be employed by defendant because of the defendant's alleged discrimination against her on account of her sex. All of the named plaintiffs complain, as class representatives, about sex-based employment practices of defendant. Their charges range from failure to employ because of sex, discharge because of sex, failure to promote because of sex, and retaliation by virtue of charges which certain of the named plaintiffs and class members filed with the Equal Employment Opportunity Commission. The complaint was filed in 1975 and the trial was concluded in May of 1981.

Plaintiff Patricia Perryman is a female residing in Atlanta, Georgia, who was employed by the defendant Johnson Products Company, Inc. for the period from July 1971 to July 1974. Plaintiff Helen Jackson Reddick is a female residing in Albany, Georgia, who was employed by the defendant for the period from January 1973 to April 1975. Plaintiff Finesse Smith Ward is a female residing in Atlanta, Georgia, who sought employment with defendant in August 1974, but was not hired.

Defendant Johnson Products Company, Inc. has its principal offices in Chicago, Illinois. It is a black-owned major cosmetic manufacturer and distributor which has experienced phenomenal growth over the years and is presently listed on the American Stock Exchange. It does business in most, if not all, of the United States, and in many countries on the African continent.

Johnson Products has employed between 250 and 550 employees during each of the calendar years between 1974 and 1981. Most of its production is accomplished in Chicago, Illinois, which is also the company headquarters and where the executive and national sales offices are headquartered.

With respect to sales, the company is divided into regions with administrative centers located in New York City, Atlanta, Georgia, Chicago, Illinois, and Los Angeles, California. Each region is subdivided into districts. Each region has a manager and each district has a manager.

There are two sales entities within the sales organization of the defendant company: One is the division of retail sales, and the other is the division of professional sales. Retail sales are those sales made to department stores, drug stores and the like, whereas professional sales are made generally to beauticians and beauty shop operators. There has been, however, some overlapping of sales between the two divisions.

At all times relevant to this action, the defendant has maintained a full-time sales force of 40 to 80 sales people in the two divisions. The defendant company was formed initially to manufacture and market only hair products. In the early 1970s, it expanded its production so as to include the manufacture of cosmetics which it marketed and sold exclusively for use by women. The sales force varied from time to time, depending upon what products were being manufactured and marketed and the emphasis placed on a particular product. Before December of 1976, the defendant had never employed a female in the position of vice-president of national accounts, national sales director, director of professional sales, or professional division field coordinator, regional manager, district manager, or other high level supervisory positions within the sales organization of the company. After December of 1976, its track record improved, especially after this lawsuit was filed in August of 1975. According to information furnished the court by defendant on July 29, 1981, in the form of a table showing dates, job positions, and sex and names of the incumbents (identified as Court's Exhibit X), this much can be verified:

In 1972, out of 16 supervisory positions existing, only three were occupied by females, to-wit: M. Morton in the position of Training Manager, V. Glenn in the position of National Sales supervisor, and R. Lawson in the position of Sales Administrator.

In 1973, out of 17 supervisory positions within the sales category, only the same three positions were occupied by females with C. Miles assuming the position of Sales Administrator formerly held by R. Lawson.

In 1974, out of 17 supervisory positions within the sales category, only two were occupied by females, those being the positions of National Sales Supervisor and Sales Administrator.

In 1975, out of 17 supervisory positions within the sales category, two again were occupied by females.

In 1976, out of 17 positions, only two were occupied by females.

In 1977, out of 17 positions, four were occupied by females, and for the first time the company had two female district sales managers.

In 1978, out of 19 positions, four were occupied by females, the same as in 1977.

In 1979, out of 19 positions, five were occupied by females.

In 1980, out of 26 supervisory positions within the sales organization, 10 were occupied by females, and apparently the number has remained the same during the year 1981.

Until sometime in 1977, the defendant did not employ a female in any direct sales management position. In 1977 two females were district managers out of a total of eight district managers. The only female to hold any major position with respect to the sales category prior to 1977 was Velma Glenn, who was the National Sales Supervisor for the professional sales division which sold directly to beauty shop operators who were largely women. There was no other woman in any direct sales supervisory position.

Historically, the sales force of the company has been staffed primarily by males. Sometime in 1971, however, the company established a sales division which was staffed almost entirely by females, who were known as cosmetic merchandisers. The cosmetic merchandisers were employed to communicate with and to present the company's cosmetic lines directly to potential women customers in the marketplace, but subsequently the program was discontinued. The position of cosmetic merchandiser was abolished and some were offered positions in the sales organization. Cosmetic merchandisers were paid considerably less than males who were employed as sales representatives in the retail sales division of the company. Defendant contends that with respect to those former cosmetic merchandisers who were hired in as sales representatives, their territories, customers, duties and pay were determined upon the same basis as their male counterparts in retail sales. The evidence indicates other-

wise, however. Women who were hired into these positions were, without exception, hired in at lower pay than their male counterparts who were hired in at about the same time. The defendant attempts to explain this on the basis that the policy of the company was to hire people in to the sales representative category at a minimum salary level and to hire those with experience at a higher salary. Because women did not have the job experience and background to demand higher starting salaries, they were, as a consequence, hired in at less pay.

■ John E. Johnson, brother of the company's president, ultimately made all decisions with respect to hiring, firing, promotion, pay, and bonuses. He was vice-president in command of sales. The company made a determination on the basis of sales activity and quotas whether or not bonuses would be paid in a given time period. The ultimate decision of how much bonus was made by Johnson. Once a district qualified for a bonus, however, the bonuses were distributed among the sales representatives on an equal basis without regard to sex. Unfortunately for this investigation, Mr. Johnson is deceased, as are two district sales managers, Ed Moore and Roosevelt Wilson. Statements attributed to all three have been challenged by defendant as constituting hearsay. The interesting thing about defendant's challenge to the admissibility of their statements on hearsay grounds is that defendant never once objected during the course of the trial. It was only after the court inquired about the effect of such evidence that it became an issue. "A statement is not hearsay if . . . offered against a party and is a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Rule 801(d)(2)(D), Fed.R.Ev. Defendant argues, but does not cite authority, that Rule 801(d)(2)(D) is inapplicable inasmuch as the agents are deceased and that only when contrary to the declarant's pecuniary or proprietary interest under Rule 804(b)(3) would the evidence be admissible as an exception to the hearsay rule. We disagree. Furthermore, the evidence was not objected to. Accordingly, the statements attributed to Messrs. Johnson, Moore, and Wilson are admissible evidence and will be considered by this court in arriving at its ultimate conclusions.

John E. Johnson, as the vice-president in charge of sales, was a virtual "one-man show". He made all decisions with respect to everything within the sales organization. He ultimately decided who would be hired, who would be fired, who would be disciplined, who would be promoted, and who would not be promoted. While there existed some written company policy respecting employee relations (Plaintiff's Exhibit 17), the evidence is overwhelming and totally unrefuted that Mr. John Johnson was the man who did everything in the sales organization. Qualifications for hiring and promotion were decided by Mr. Johnson on an ad hoc basis. This subjective determination on his part operated unquestionably in this case to place women in a subordinate position to their male counterparts in the sales organization of Johnson Products Company, Inc. Women were started at a pay scale lower than men in comparable positions, and bonus and merit increases never allowed them to catch up to their male counterparts. Johnson Products Company, Inc. had no affirmative action plan during the period pertinent to this investigation. It had no job posting system, no method or manner of providing notices of vacancies or promotion possibilities other than in the hourly wage ranges.

Claudette Trufant, a female resident of the state of Louisiana, was hired as a cosmetic merchandiser in New Orleans at a salary of less than $7500, as were Patricia Perryman, Ann Smith, Rolena Porter, Diane Bradley, and Barbara Isiah. When Patricia Perryman was afforded the opportunity to be hired into the retail sales division, her salary was less than $8500. At the same time, males were hired into the retail sales division at salaries in excess of $9500. Two of these were Glenn Morgan and Sam Haynes.

The professional sales category was no different. Steve Cummings, a male, was hired into the professional sales category at a salary above $7500, while plaintiff Helen Reddick and other females were hired into the professional sales category at salaries below $6500.

Plaintiff Perryman filed a charge with EEOC on or about July 30, 1974, complaining that she was terminated on July 12, 1974, because of her sex. She claimed further that she was denied promotion in 1973 to the position of district manager and was otherwise denied consideration for better-paying positions throughout the company's sales organization even though she was qualified to perform those jobs. Plaintiff Helen Reddick filed her EEOC charge in 1974 claiming promotion denial on the basis of sex and subsequent termination because of her sex. She also claimed retaliation on the part of defendant because of her previous filing of the EEOC charge. Plaintiff Perryman claims also that she was terminated out of retaliation for complaining about the company's sex discrimination.

Plaintiff Finesse Ward filed her EEOC charge on August 29, 1974, after she had read a newspaper advertisement which sought new employees to work for the company, and because the company representative, a Mr. Ed Moore, then a district sales manager, told her that the company was not fond of women who had worked for the company because "they were a bunch of rotten eggs." Plaintiff Ward was rejected and was not hired by the company and she contends that this was because of the company's discrimination against females. Plaintiff Ward had had some background in sales, and despite her young age, had worked as a beauty supply store manager and had served as a sales person including a part-time job she held in 1970 for the defendant. While Moore told her that he would not hire her because he wanted a man to fill the position (the newspaper ad had used the word "salesman"), he did offer her a job as a "demonstrator." She testified that at the time of the interview, Mr. Moore made it clear that he had been instructed by Johnson Products to hire a man because women who have been in that job before were nothing but problems for the defendant. She testified that the job was ultimately filled by a man.

A number of men who were hired at the same time or subsequent to the hire of Claudette Trufant, Helen Reddick and Patricia Perryman, and who had no more experience, and in several cases less experience, in a related field of endeavor, were promoted to district sales managers over the three women.

Helen Reddick has a college degree. She went to work for the defendant on a part-time basis to demonstrate cosmetics in an area that was staffed totally by females, but left Johnson Products shortly thereafter. Later she was interviewed for a full-time job by Mr. John Johnson. She went back to work for Johnson as a part-time employee, a cosmetic demonstrator, who was hired, trained and supervised by plaintiff Perryman. In 1973, she was taken in as a part-time sales representative and received classroom training along with seven men and three women, all of whom were permanent employees. Out of those ten people, plaintiff Reddick was the only female to finish the course. After the training school, she was assigned to Atlanta on a part-time basis in the professional sales division. Reddick says that she was discriminated against because of her sex and that she was the only part-time employee in her category and that there were no males on a part-time basis. In July of 1973, Bruce Johnson, a male, was hired six months after Reddick went to work for Johnson in the position of retail sales representative. He was trained in the field in retail sales, and although Reddick had been assigned to professional sales, she had been servicing some accounts of a retail nature and so she trained Mr. Johnson in the field. When Johnson was hired full time, Reddick was still part-time. When she trained him, she did it full time but after training was again put back on a part-time basis. Shortly thereafter, plaintiff Reddick became a full-time employee. Reddick also claims sex discrimination because while she was part-

time and Johnson was full-time, his salary was $9,000 and hers was only $5,000. When she was hired on a full-time basis, her salary was roughly $8,000 a year. She complained about this to Velma Glenn, a female in charge of the professional sales area; Velma Glenn told her that the company favored men.

After the filing of an EEOC charge by Reddick in August of 1974, she was placed on probation by the company and subsequently terminated on April 4, 1975. She claims that the basis for her complaint was her part-time training, the hiring of Bruce Johnson on a full-time basis when she was still part-time, and the disparity in salary between Johnson's and hers.

Reddick was called to Chicago where she met with John Johnson, the vice-president of sales, who made all the decisions respecting sales. He wanted to know why Reddick had filed an EEOC charge. Apparently Johnson talked with Reddick on two occasions and in November asked her if she could afford to file an EEOC complaint. He then called in Velma Glenn and placed Reddick on probation to give her an opportunity to prove herself, claiming that if she did so she would get a raise. She testified that later she got a letter from Ms. Glenn commending her and offering her a salary increase in January, but in April of 1975 she was fired by one Walter Leapheart, who was then director of professional sales. When she inquired of Leapheart why she had been fired, he did not give her an explanation. Later she got a letter stating that the reason for her termination was her bad job performance. She testified that she had never received any complaints before her probation.

Reddick further testified that she was having to make both retail and professional sales, whereas men did not do both. She also said that Bruce Johnson got a higher salary and Steve Cummings, who was hired and trained at the same time as Reddick, was promoted to a supervisory position and she was not, even though she was as qualified as Cummings. She testified that she did not know of any women who were promoted within the sales division during her tenure, but there were at least four men who had been: Steve Cummings, who came to work at the same time as Reddick; Eugene Robinson, who came to work after Reddick; someone in the Miami, Florida district whose name she could not remember; and someone else in the Chicago district whose name she did not remember.

Patricia Perryman is a college graduate who came to work for Johnson in July of 1971, and was discharged in July of 1974. She had some background and experience in beauty sales and started with the defendant company in the position of cosmetic merchandiser. The position of cosmetic merchandiser was abolished in December of 1971. She was offered a position in retail sales. She testified that in 1972 there was a vacancy for a district sales manager's position, but that the position was assumed by Mr. John Johnson even though she did the work. Perryman did the work of a district sales manager although she did not receive any official recognition by title and she did not receive any increase in pay. She performed this job from August of 1972 until sometime in early September of 1973 when Roosevelt Wilson came in from Louisiana as the new district sales manager. While she was doing this work, her district led the nation in sales volume. She did receive some recognition in that she got a bonus every quarter that the system was in effect and also got a small gift of stock in 1973.

While Perryman was employed with Johnson, women were not promoted above the position of sales representative. She complained about this to Mr. John Johnson who knew that she wanted the position of district sales manager but he would never commit himself to give her that position. She testified that Glennie Morgan, who came to work six months after her, got three promotions to sales supervisor, district manager and regional manager. Roosevelt Wilson, who came in about six months after Perryman, got two promotions to sales supervisor and district sales manager. Sam Haynes came to Johnson about one year

after Perryman and got two promotions; Henry Young came about one year after her and received a promotion, as did Sam Perryman, who came to work after Perryman. She claims that she was as qualified, if not better qualified, than any of the men who were promoted. Apparently, plaintiff Perryman took a rather strong position with respect to Johnson's policies of sex discrimination, and she claims that she was terminated for this rather than for the stated reason of "lack of a sound sales philosophy." She further testified that she had been recommended for a pay raise by Roosevelt Wilson, but it was denied by John Johnson. Perryman says that she had never received any complaint before she was terminated. She says that at least two males were placed on probation before they were terminated, a Mr. Barbie and a Mr. Craig.

Another witness for plaintiffs was Samuel Haynes, a male formerly holding the position of district sales manager. According to Haynes, the company had no affirmative action plan, and no guidelines or objective standards to be applied in the selection, promotion or termination of employees. Haynes testified that he did not have authority to hire a sales representative, but only to recommend to Mr. John Johnson who would then interview and ultimately select the person to be employed. According to Haynes, Johnson made all the decisions and his position and that of other people within the company was merely to make recommendations to Mr. Johnson who ultimately made the final decision. While there were guidelines respecting pay, the same was flexible and it depended entirely on Mr. Johnson as to how they were to be implemented and what the ultimate pay would be for new employees or salary increases. According to Haynes, Mr. Barbie was given warning and placed on probation but Claudette Trufant was not given a warning and placed on probation although she was a better employee than Mr. Barbie. He also testified that it was his belief that women were not paid equally for equal work.

The first woman Haynes terminated was Rolena Porter in Memphis, Tennessee. He was ordered to do so by John Johnson. Although Haynes initially would not go along with Johnson's orders, later Johnson insisted and he went along. Ms. Porter had written a letter to George Johnson, with a copy to John E. Johnson, claiming that she was being overlooked for promotions. Haynes believed that she was fired because of her sex and the letter because after she was fired, he was told by John Johnson to put together a derogatory personnel file. He also fired another female by the name of Isabel Paulding. He did this on Johnson's orders and he believes it was because she was a female. According to Haynes, he recommended one female for the position of district manager (a Ms. Sims) and one woman to become assistant manager (a Ms. Oliver). Ms. Sims was not given the position but a man was. Likewise, Ms. Oliver was not hired because of lack of qualifications. She was hired later, however.

Rolena M. Porter of Memphis, Tennessee testified with respect to her tenure as an employee of Johnson products. She also testified with respect to her background. She was hired by Johnson as a professional sales representative and in September of 1969 was transferred into retail sales. She testified that she was never promoted, but several males who were employed after her were promoted. She testified about Ed Moore, Glenn Morgan, Sam Haynes, Steve Cummings, Sam Perryman and Roosevelt Wilson, all of whom were hired after her and who received promotions, whereas neither she nor any other female was promoted. She testified that one Vernon Mitchell was hired the same day as she and that Mitchell started at $12,000 whereas her starting salary was only $6,000. She testified that she was fired by Sam Haynes without any reason. She claims that she had never received any complaints before but that she had written George Johnson, the president of the company, a letter earlier complaining about her inability to secure a promotion. (Plaintiffs' Exhibit 6.) She claimed that she had had accounts transferred from her which were given to male counterparts.

Bruce Johnson also testified that he came to work for Johnson Products in June of 1973 and stayed until April of 1976. He knew Helen Reddick and Pat Perryman. He also knew Roosevelt Wilson and he had good things to say about Reddick's job performance. Bruce Johnson testified that Glenn Morgan told him that he would not have women working for him if he had his way about the matter because women had too many problems.

George Alan Smith, the Director of Human Resources for Johnson, testified that, as such, he was the personnel head and had been since March 18, 1980. He identified certain personnel files of certain employees of the defendant. He further testified that there were no job descriptions and no written guidelines for starting salaries except minimum and maximum starting salaries. He testified that women earned less than men generally and Johnson's policy was to hire at the former salary plus about 12 percent if the person had experience in a related field. Johnson would not, however, go below a minimum salary for the particular job. He further testified on cross-examination that there was no real policy in regard to hiring, firing, promotion, salary, etc. He said that most determinations were made on a subjective basis. Salary raises were usually approximately 8 percent and were paid yearly. He admitted that if. a woman came in at a salary below a man, and each got the annual 8 percent salary increase, that this would tend to result in the woman's salary position being always under the man's. Steven Cummings next testified for the defendant and his testimony was, in essence, that the situation with respect to Johnson Products and female employees is better than it had been. He admitted that men are still in the majority in retail sales and the women are in the majority in professional sales. Two of the three area managers in the professional sales division are women, and there is now one woman district manager in retail sales.

Mrs. Dorothy McConner testified for the defendant that she was vice-president in charge of administration and had been in that position since 1972. She testified that women have responsible jobs with the defendant and she listed and testified as to some of those job positions. Prior to 1977, however, none of those positions related to the sales organization.

Celeste Myles also testified for the defendant that she started with Johnson in July of 1969 as a secretary. In 1974 she became the administrative assistant to John Johnson. She is now sales administrator and reports to a Mr. Coleman, who is the national sales manager. She has held this job since March of 1980.

Randall Coleman, the national sales manager of retail and professional sales, testified for the defendant. He had been a regional sales manager from 1976 until the latter part of 1978, and prior to that time was a district sales manager. He testified that while a district sales manager he screened 25 to 30 candidates for sales representative positions, and of those about one-third were females. He hired eight or nine females, but admitted that the final decision was left up to Chicago, presumably to Mr. John Johnson. Prior to the late 1970s, he did not recall any females being promoted to the position of district manager, but testified that several were promoted to senior sales representatives. He testified that to date, of eight district managers, four are women. (This is inconsistent with Court's Exhibit X, which shows only three.) He testified that all training heads are women and that two of the three professional sales managers are women and that over 50 percent of the sales force are now female.

## CONCLUSIONS OF LAW

1.

There is no dispute as to the jurisdiction of this court over the subject matter or the parties to this litigation.

2.

█ The class is hereby re-certified to encompass "all females who applied for employment with, or were employed by, the defendant as sales representatives in the retail and professional sales divisions of

Johnson Products Company, Inc. after January 31, 1974." With such re-certification, the court hereby concludes that the plaintiffs are adequate representatives of that class of female employees and applicants for employment who were terminated, not promoted, not hired, or retaliated against during the relevant time frame starting January 31, 1974 to the present. *See Falcon v. General Telephone Co.*, 626 F.2d 369 (5th Cir. 1980).

### 3.

 The employment practices and policies of the defendant regarding the placement of women into sales positions with the defendant company, and the refusal to hire women into the sales organization of the company and the denial of promotion opportunities on the same terms and conditions as male employees is an unlawful employment practice which is proscribed by Title VII, 42 U.S.C. §§ 2000e *et seq.* It is likewise an unlawful employment practice to retaliate against any employee for filing a charge with the EEOC complaining of sex discrimination.

### 4.

Plaintiffs have clearly established a pattern and practice of sex discrimination for themselves and their class. Plaintiffs have demonstrated purposeful and disparate treatment on account of sex at the hands of defendant. Likewise, with respect to named plaintiffs Perryman and Reddick, there has been proven retaliation for the filing of charges. Plaintiffs have prevailed in their showing of sex-based discrimination as to hiring, firing and failure to promote, and defendant has not articulated any legitimate, non-discriminatory reasons for its actions, nor has it justified the same by considerations of business necessity.

### 5.

Counsel for plaintiffs are hereby ORDERED to prepare a decree incorporating therein the conclusions of the court and to present the same (after submitting the same to counsel for defendant Johnson Products Company, Inc. for approval as to

form) within thirty (30) days of this order. The decree should specifically provide for notice to members of the class, as re-certified in this order, respecting any monetary relief and providing for the means and method of determining entitlement, if any, thereto and distributing any monetary relief.

IT IS SO ORDERED.